**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                                       CRIMINAL ACTION NO. 2:07-cr-00153

DEVON FAUCETT,

                Defendant.

**MEMORANDUM OPINION AND STATEMENT OF REASONS**

I conducted a sentencing hearing on April 9, 2008. After calculating the relevant guideline range, hearing argument and evidence, and analyzing the relevant 18 U.S.C. § 3553(a) factors, I imposed a variance sentence of 30 months imprisonment, followed by a supervised release term of 4 years, which is below the guideline imprisonment range of 37 to 46 months. In this Memorandum Opinion, I explain why the conversion ratios contained in U.S.S.G. § 2D1.1 app. note 10(D) result in unwarranted sentencing disparities.

**I.      Background**

On May 17, 2007, an undercover detective with the Metropolitan Drug Enforcement Network Team ("MDENT") met a confidential informant ("CI") who indicated that she[1] could purchase cocaine base from a supplier. After coordinating with other uniformed officers, the MDENT detective arranged for the CI to phone Devon Dewayne Faucett to puchase two "8-balls"

---

[1] The Presentence Investigation Report does not reveal the gender of the CI. The court adopts the feminine pronoun for the sake of simplicity.

of cocaine base. The CI placed a series of recorded phone calls to the defendant, in which the CI and Mr. Faucett agreed on the price and the location of the transaction. As Mr. Faucett approached the arranged location, the CI identified Mr. Faucett, and the officers detained him. The arresting officers found two bags containing cocaine base in Mr. Faucett's possession, which weighed a total of 9.98 grams. The officers then obtained consent from Mr. Faucett's girlfriend to search the residence they shared, where they found 61.57 grams of marijuana packaged in 19 small baggies along with $160 cash.

On August 14, 2007, a grand jury in this district returned an indictment against Mr. Faucett based on the events of May 17, 2007, alleging one count of possession of five grams or more of cocaine base with the intent to distribute, *see* 21 U.S.C. § 841(a)(1)(a), and one count of possession of marijuana with the intent to distribute, *see* 21 U.S.C. § 841(a)(1)(a). The defendant entered into a plea agreement with the United States on October 19, 2007, in which he agreed to plead guilty to the cocaine base charge contained in Count One of the indictment. Since the time of his indictment, Mr. Faucett has been released on an unsecured bond at the recommendation of the probation officer.

The probation office prepared a Presentence Investigation Report using the November 1, 2007, edition of the United States Sentencing Guidelines after conducting an interview with the defendant. In determining the base offense level under U.S.S.G. § 2D1.1, the probation officer included the amount of marijuana confiscated at Mr. Faucett's residence as relevant conduct pursuant to U.S.S.G. § 1B1.3. After performing the conversion contained in U.S.S.G. § 2D1.1 app. note 10(D), the probation officer properly calculated a base offense level of 26. After a two-level reduction for the safety valve, U.S.S.G. § 5C1.2, and a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, Mr. Faucett's total offense level was 21. He had no criminal

history for which criminal history points attached, establishing a Criminal History Category of "I." His resulting guideline range was therefore 37 to 46 months in prison, a term of supervised release of 4 to 5 years, a fine of $7,500 to $2,000,000, potential denial of federal benefits of five years, and a special assessment of $100. While the Report correctly calculates the Guideline range, the application of § 2D1.1 app. note 10(D) leads to a disparate Guideline range, as will be fully discussed below.

## II.     2007 Amendments and Polysubstance Conversion Calculation

Amendment 706 to the United States Sentencing Guidelines, effective November 1, 2007, imposed changes to, among other things, the base offense level for various amounts of cocaine base ("crack"). *See* U.S.S.G. App. C, Amend. 706, 711. The Sentencing Commission amended the guideline levels for crack as part of a self-described "continuation of its work with the congressional, executive, and judicial branches of the government and other interested parties on cocaine sentencing policy." U.S.S.G. App. C, Amend. 706 (citation omitted). The Commission's further evaluation "continue[s] to support [it]'s consistently held position that the 100-to-1 drug quantity ratio [for crack and powder cocaine] significantly undermines various congressional objectives set forth in the Sentencing Reform Act and elsewhere." U.S.S.G. App. C, Amend. 706. Practically speaking, the heart of Amendment 706 was an across-the-board reduction by two Guideline levels of the base offense level attributable to crack cocaine offenses. For example, under the November 1, 2006, edition of the Guidelines, a conviction involving between 5 and 20 grams of crack resulted in a base offense level of 26. The same drug weight would result in a base offense level of 24 under the 2007 edition of the Guidelines.

In pre-2007 cases involving more than one type of controlled substance, the Guidelines required that each controlled substance be converted to an equivalent amount of marijuana. The pre-2007 Guidelines then assigned a base offense level by applying the marijuana Drug Quantities Table corresponding to the aggregate amount of converted marijuana. The 2007 Guidelines continue to use a conversion method, but deviate from the previous scheme in one major respect. The pre-2007 Guidelines provided a fixed conversion ratio for converting crack cocaine weights into marijuana equivalency. For example, the 2006 edition of the Guidelines applied a flat conversion ratio of 20 kilograms of marijuana to each gram of crack.

The November 1, 2007, amendments, on the other hand, provide a more complicated four-step process for determining the marijuana conversion and base offense level in cases involving multiple controlled substances. *See* U.S.S.G. § 2D1.1 app. note 10 (B), (D). First, when an offense involves cocaine base,[2] U.S.S.G. § 2D1.1 app. note 10(D)(i)(I) instructs the court to identify the base offense level of the amount of cocaine base without any regard for the non-cocaine base controlled substances. *See* U.S.S.G. § 2D1.1(c)(8) (providing a base offense level of 24 for an offense involving at least 5 grams but less than 20 grams of cocaine base). Section 2D1.1 app. note 10(D)(i)(II) next instructs the court to convert the amount of cocaine base to marijuana using the following conversion ratio table and the base offense level established in the first step:

---

[2] Section 2D1.1 app. note 10(D) appears to apply to all cases involving cocaine base. *See* § 2D1.1 app. note 10(D)(I) ("If the offense involves cocaine base ('crack') and one or more other controlled substance . . . ."). That is, this unique calculation applies whenever crack is included in relevant conduct, and the Application Note is not limited by its terms to cases where cocaine base was involved in the offense of conviction. If cocaine base is not involved in a polysubstance case, the court must use the conversion method contained in § 2D1.1 app. note 10(B).

| Base Offense Level | Marijuana Equivalency |
|---|---|
| 38 | 6.7 kg of [marijuana] per g of cocaine base. |
| 36 | 6.7 kg of [marijuana] per g of cocaine base. |
| 34 | 6 kg of [marijuana] per g of cocaine base. |
| 32 | 6.7 kg of [marijuana] per g of cocaine base. |
| 30 | 14 kg of [marijuana] per g of cocaine base. |
| 28 | 11.4 kg of [marijuana] per g of cocaine base. |
| ***26*** | ***5 kg of [marijuana] per g of cocaine base.*** |
| ***24*** | ***16 kg of [marijuana] per g of cocaine base.*** |
| 22 | 15 kg of [marijuana] per g of cocaine base. |
| 20 | 13.3 kg of [marijuana] per g of cocaine base. |
| 18 | 10 kg of [marijuana] per g of cocaine base. |
| 16 | 10 kg of [marijuana] per g of cocaine base. |
| 14 | 10 kg of [marijuana] per g of cocaine base. |
| 12 | 10 kg of [marijuana] per g of cocaine base. |

As the table makes plain, the ratio varies from as little as 5 kilograms of marijuana to 1 gram of crack (for crack weights punishable by a guideline level of 26), to as much as 16 kilograms of marijuana to 1 gram of crack (for crack weights punishable by a guideline level of 24). In Mr. Faucett's case, because the amount of cocaine base would place him at guideline level 24, the conversion rate was 16 kilograms of marijuana to each gram of crack. Thus, his 9.98 grams of crack converted to 159.68 kilograms of marijuana. In the third step, the court must determine the combined marijuana equivalency for the other controlled substances included in the offense by relying on the conversion equivalency contained in § 2D1.1 app. note 10(E). *See* § 2D1.1 app. note 10(D)(i)(III). The conversion tables for non-cocaine base controlled substances provides for fixed conversion ratios, as opposed to the sliding ratio applied to cocaine base. For example, each gram of cocaine powder converts to 200 grams of marijuana. In the final step of the process, the court combines all of the marijuana amounts to arrive at an aggregate amount of marijuana, which is used to assign a base offense level. *See* § 2D1.1 app. note 10(D)(i)(IV). Here, Mr. Faucett possessed an amount of marijuana, so the court simply adds the 61.57 grams of marijuana to the 159.68 kilograms

of marijuana resulting from the converted cocaine base, resulting in a total equivalency of 159.74 kilograms of marijuana from the offense and relevant conduct.

Mr. Faucett's 159.74 kilograms of marijuana corresponds to an offense level of 26. *See* § 2D1.1(c)(7) (providing an offense level of 26 for "[a]t least 100 KG but less than 400 KG of [marijuana]"). It bears noting that the converted amount of cocaine base alone, 159.68 kilograms of marijuana, would have vaulted Mr. Faucett into the higher offense level of 26. Indeed, had Mr. Faucett possessed 6.25 grams of cocaine base and a single marijuana cigarette, which would trigger a conversion of the cocaine base, Mr. Faucett would once again find himself in offense level 26.

### III. Section 3553(a) Factors

The practical implementation of the polysubstance conversion scheme presents some unintended consequences. Mr. Faucett's conduct brings into stark contrast some of the shortfalls of the 2007 Amendments, and how the results of the guideline sentence are at odds with the sentencing directives in § 3553(a) that this court must balance at Congress' direction.

    A.    <u>The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.</u>

As presented by the parties, and confirmed by the Presentence Investigation Report, the defendant appeared to be engaging in low-level drug distribution. He did not maintain a livelihood based on controlled substance distribution. Nevertheless, he possessed a not insignificant amount of cocaine base when he arrived at the location arranged by the CI. Mr. Faucett did not possess a weapon at the time he was detained, and no firearms were found at his home. Nothing about Mr. Faucett's conduct demonstrated a violent nature or disposition. Likewise, the defendant's criminal history does not convey the message that Mr. Faucett is an habitual offender. He has been charged with several crimes, many of which date back to when he was 16 years old, but he has not been

convicted of any serious crime. On this criterion, Mr. Faucett appears to fall within the "mine run" of defendants with like criminal histories and offense conduct.

> B. The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records.

With regard to this factor, the Guidelines create an unjustifiable disparity among defendants with substantially similar records. As discussed above, Mr. Faucett's conduct involved 9.98 grams of cocaine base and just over 61 grams of marijuana, which resulted in a base offense level of 26 after conversion. If, instead of possessing 61 grams of marijuana as relevant conduct, Mr. Faucett had possessed twice the amount of cocaine base (19.96 grams) and no other substances, his base offense level would have been 24. *See* U.S.S.G. § 2D1.1(c)(8). Mr. Faucett's advisory Guideline range would have ultimately been 30 to 37 months after accounting for the additional reductions that he received. Because he possessed a small amount of marijuana, however, he received what amounts to a sentencing enhancement of two levels because of the marijuana conversion table.

Had this enhancement resulted from an empirically-based attempt by the Sentencing Commision to punish more severely defendants who possessed multiple kinds of drugs, the court would likely give great weight to those policy considerations. This de facto enhancement is not, however, a result of any such policy consideration. Instead, it appears clearly to be an unintended consequence that results in disparate treatment for defendants who posses cocaine base in addition to other drugs. Suppose a defendant possessed 6.25 grams of cocaine base, and a single marijuana cigarette. That cocaine base amount would place the defendant in offense level 24, and a conversion ratio of 16-to-1. Converting the cocaine base into marijuana (6.25 x 16 kg) results in a marijuana equivalency of 100 kilograms. Before even factoring in the marijuana cigarette, the defendant would receive the higher offense level category 26 because of the conversion ratio rather than the

addition of the amount of drugs attributable to the marijuana cigarette. *See* U.S.S.G. § 2D1.1(c)(7) (providing a base offense level of 26 for at least 100 KG of marijuana but less than 400 KG marijuana).

Contrast that example with another hypothetical case where a defendant's conduct involved 34 grams of crack, 145 grams of cocaine powder, and 200 kilograms of marijuana. Because the crack would otherwise fall within offense level 26, the conversion ratio would be 5 kilograms of marijuana to each gram of crack. The 34 grams of crack would convert to 170 kilograms of marijuana. The cocaine powder conversion ratio (145gm x .2 kg) would result in an additional 29 kilograms of marijuana equivalency. Adding that converted amount to the 200 kilograms of marijuana results in a total of 399 kilograms of marijuana and a base offense level of 26. *See* U.S.S.G. § 2D1.1(c)(7) (providing a base offense level of 26 for at least 100 kilograms of marijuana but less than 400 kilograms marijuana). This same advisory Guideline offense level would apply to a defendant who possessed 6.25 grams of cocaine base and a single marijuana cigarette, and it also applies to Mr. Faucett's case, which involved 9.98 grams of cocaine base and 61 grams of marijuana.

In the range of potential conduct punished by offense level 24 (at least 5 grams but no more than 20 grams), the conversion ratio of 16-to-1 assures that 91.67% of all potential cocaine base quantities in that range will result in the automatic elevation to offense level 26 if the defendant possesses an additional drug – not *because* the offense involves another type of drug, but instead based solely on the required conversion ratio of 16 kilograms of marijuana to one gram of crack.

While I recognize that the Commission tied the conversion ratio to the base of the converted amount of drug (5 grams of cocaine base multiplied by 16 kilograms results in 80 kilograms, the

-8-

base amount punishable by guideline level 24), the conversion ratio does not account for the potential that most defendants would not possess the bare-minimum amount of drugs that would result in a given weight range. The result is that a minute amount above the base range results in an automatic enhancement, and low-level offenders such as Mr. Faucett receive a two-level enhancement because the Sentencing Commission provided varying drug ratios for crack offenses. The irony is that the comparatively low-level offenders receive the harshest conversion ratios. *See* U.S.S.G. § 2D1.1 app. note 10(D)(i)(II) (applying a 16-to-1 ratio to crack amounts involving between 5 and 15 grams, but applying a 6.7-to-1 ratio to crack amounts involving between 500 grams and 1.5 kilograms).

This increase is triggered solely by the Guidelines conversion, which is itself triggered by the presence of an additional controlled substance. The question before me, then, is whether in cases involving crack cocaine and another drug, this de facto two level increase is permissible in light of § 3553(a)(6). Had the defendant possessed a substantially larger amount of cocaine base to begin with, I would be less concerned. Under these facts, however, I choose to impose a downward variance sentence of 30 months imprisonment. In imposing this sentence the court is neither ignoring relevant conduct nor rejecting the Sentencing Commission's policy. Instead, I have carefully calculated the base offense level of 26 (ultimately lowered to 21 for reductions) and noted that the de facto two-level conversion enhancement is not supported by any discernable Sentencing Commission policy. *See United States v. Horta*, 534 F. Supp. 2d 164, 167 (D. Me. 2008) ("[T]here is no suggestion in the Commission documentation as to why this particular computational anomaly exists."). The variance thus primarily rests on § 3553(a)(6) and the need to avoid unwarranted sentencing disparities. In this case the disparity is created by nothing more than an unjustified

conversion ratio inexplicably adopted by the Sentencing Commission. I find that this disparity runs afoul of Congress' stated policy in § 3553(a)(6). I am not the first to notice this problem. In this case I found and have followed the rationale that my friend Chief Judge Collier laid out in *United States v. Watkins*, 531 F. Supp. 2d 943 (E.D. Tenn. 2008).[3] Although I have chosen to impose a variance rather than departure sentence, I concur fully in his assessment that "the Guidelines as written produce[] an irrational result." *Id*. at 944.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal and to publish the decision on the court's website at www.wvsd.uscourts.gov.

ENTER:     April 10, 2008

_____
Joseph R. Goodwin, Chief Judge

---

[3] As Chief Judge Collier notes in footnote one of his opinion, the conversion disparity occurs for substances that initially fall with in guideline levels 24, 30, 32, and 36. *Watkins*, 531 F. Supp. 2d at 945.